```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/25/22____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

UNITED STATES OF AMERICA,                 :

                      -against-                 :

                                        :

JASON MARLEY,                 :

                            Defendant.                 :

------------------------------------------------------------ X

        21-CV-4725 (VEC)
        16-CR-374 (VEC)

        OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

        Jason Marley, proceeding *pro se*, filed this Section 2255 petition (the "Petition") seeking

to vacate his sentence on the grounds of: (1) ineffective assistance of counsel, including his pre-

trial and trial counsel; (2) violation of his due process rights in the form of prosecutorial

misconduct; and (3) newly discovered evidence that supports a claim of actual innocence.  Pet.,

Dkt. 271.[1]  Upon careful review of Mr. Marley's arguments and the record, the Court finds that

Petitioner's claims lack merit or are procedurally barred.  Accordingly, the Petition is DENIED.

## BACKGROUND

        On May 27, 2016, Mr. Marley and two co-defendants were charged in a two-count

indictment.  *See* Indictment, Dkt. 17.  Mr. Marley initially retained Mark Cohen to represent him.

*See* Not. of Appearance, Dkt 21.  On December 29, 2016, Mr. Cohen filed a motion to withdraw

as Mr. Marley's attorney, *see* Mot. to Withdraw, Dkt. 65, which the Court granted on January 4,

2017, *see* Order, Dkt. 68.  On January 10, 2017, Bryan Konoski, who had been appointed by the

Court, filed a notice of appearance for Mr. Marley.  *See* Not. of Appearance, Dkt. 75.  On

---

[1]       All citations to the docket refer to Docket No. 16-CR-374.

January 31, 2018, Mr. Marley was charged in a two-count superseding indictment.  *See* S4, Dkt.
164.

Before trial, on April 3, 2017, Mr. Marley, represented by Mr. Konoski, moved to
suppress "all physical evidence taken from Mr. Marley's Person, from the vehicle he was a
passenger in, or from his cell phone, based on the Government's misconduct in obtaining the. . .
GPS Order and . . . Search Warrant."  *See generally* Mot. to Suppress, Dkt. 94.  In the
alternative, Mr. Marley requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)
(the "*Franks* hearing"), arguing that if the false and misleading statements were removed from
the application for GPS tracking of Mr. Marley's cell phone, the application would have lacked
probable cause.  Mem. of Law, Dkt. 96 at 7–11.  In addition to challenging the GPS Order, Mr.
Marely moved to suppress all evidence derived from an alleged warrantless search of Mr.
Marley's phones.  *Id.* at 23–28.

The Court held a suppression and *Franks* hearing on July 20 and 21, 2017.  *See generally*
Tr. of Proceedings, Dkts. 137, 139.  At the hearing, Special Agents Marlow Luna and James
Ender, Drug Enforcement Agency ("DEA") agents involved in the investigation, testified about
an undercover call that Special Agent Luna had made to Mr. Marley that provided probable
cause for the GPS Order.  Op. and Order on Mot. to Suppress, Dkt. 148 at 12.  Mr. Marley
testified that the phone call never occurred.  *Id.*  On October 31, 2017, the Court denied Mr.
Marley's motion to suppress in a written opinion.  *See id.*  The Court held that even though there
were some misleading statements in the affidavit submitted to obtain the GPS Order, there were
sufficient other facts to establish probable cause for the Order.  *Id.* at 13–15.  The Court also
found that Mr. Marley's testimony that the call had never occurred was "not credible and . . .
was contradicted by considerable evidence in the record."  *Id.* at 12.  Further, the Court held that

Mr. Marley's assertion that the DEA agents searched his password-protected phone was "baseless speculation." *Id.* at 23.

On March 19, 2018, following a jury trial, Mr. Marley was convicted on both counts in the superseding indictment. *See* Verdict Sheet, Dkt. 183. At trial, the Government presented testimony from 12 witnesses. Three witnesses, including the woman in whose home he lived, testified to their personal knowledge of Mr. Marley's participation in drug trafficking. *See* Trial Tr. 39–128, 192–262, 331–81.[2] DEA agents, an N.Y.P.D. officer, a government scientist, and a criminalist for the medical examiner testified about the investigation and seizures of drugs and firearms that were connected to Mr. Marley. *See* Trial Tr. at 129–88, 275–83, 382–95, 422–51. The Government also introduced audio recordings of calls in which Mr. Marley used coded language to manage his drug business and text messages showing Mr. Marley's contacts with the witnesses. *Id.* at 93–96, 281, 361–63, 380–81. The Court sentenced Mr. Marley to 13 years imprisonment to be followed by five years of supervised release. *See* Judgment, Dkt. 228.

Mr. Marley appealed, arguing primarily that the Court erred in denying his motion to suppress. *See* Not. of Appeal, Dkt. 229; *see United States v. Marley,* 800 F. App'x 4, 7 (2d Cir. 2020). In a decision dated January 15, 2020, the Second Circuit held that the Court "properly concluded that the remaining portions of the affidavit [after being corrected by the Court] were sufficient to support a finding of probable cause." *Marley*, 800 F. App'x at 7. The Second Circuit also held that "the district court did not commit clear error when it rejected Marley's allegation that officers searched his phone without a warrant." *Id.*

On May 14, 2021, Mr. Marley filed this Petition. *See* Pet., Dkt. 271. He seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government opposes the

---

[2]     Docket 201 includes Tr. Transcript pages 1–270; Docket 203 includes Tr. Transcript pages 271–459.

motion as untimely and meritless.  *See generally* Gov. Opp., Dkt. 273 at 1.  Although the Court

extended Mr. Marley's deadline to reply, Mr. Marley failed to file a reply.  *See* Order, Dkt. 276.

Instead, Mr. Marley belatedly filed a request for the appointment of counsel, *see* Dkt. 277, which

the Court denied, *see* Dkt. 279.

## DISCUSSION

### I.     Legal Framework

The Court notes at the outset that Petitioner is proceeding *pro se*, and that "the

submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest

arguments that they suggest.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.

2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

By means of a Section 2255 petition, a petitioner "may move the court which imposed

[petitioner's] sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).   Relief

under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently

results in a complete miscarriage of justice."  *Brama v. United States*, No. 08-CV-1931, 2010

WL 1253644, at *2 (S.D.N.Y. Mar. 16, 2010) (internal quotation marks omitted) (quoting *United

States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).  Further, "[a]s a general rule § 2255 petitioners

may not raise on collateral review a claim previously litigated on direct appeal."  *Abbamonte v.

United States*, 160 F.3d 922, 924 (2d Cir. 1998).

### II.    Timeliness

A section 2255 petition must be filed within one year of one of four benchmark dates; the

relevant one in Mr. Marley's case is when "the judgment of conviction becomes final."  28

U.S.C. § 2255(f)(1).  It is well-settled that the "judgment of conviction becomes final when the

time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003).  The Government argues that Mr. Marley's petition is untimely, and that, therefore, the Court should not consider it on the merits. *See* Gov. Opp. at 4–5, 8–10.

Mr. Marley's conviction was affirmed on January 15, 2020.  *Marley*, 800 F. App'x at 4; *see also* Gov. Opp. at 4.  The deadline to file a petition for a writ of certiorari is "90 days after the entry of the judgment," Sup. Ct. R. 13(1), and, as a result, Mr. Marley's time to file a petition for certiorari would ordinarily have expired on April 14, 2020, making April 14, 2021, the deadline for him to file a habeas petition.  Mr. Marley's petition was filed on May 14, 2021, one month after that purported deadline.  *See* Pet., Dkt 271.  The Government urges the Court not to equitably toll the limitations period.  Gov. Opp. at 8–10.

Under normal circumstances, the Government's argument would succeed.  But Spring of 2020 was not a normal time: on March 19, 2020, the Supreme Court issued an order extending "the deadline to file any petition for a writ of certiorari due on or after the date of this order . . . to 150 days from the date of the lower court judgment . . ."  Order Regarding Filing Deadlines, 589 U.S. __ (2020).  The Supreme Court rescinded that order on July 19, 2021.  Order Rescinding Prior Covid Rules, 594 U.S. __ (2021).  Because Mr. Marley's petition for a writ of certiorari was due after March 19, 2020, the deadline for him to file it was extended to 150 days from the Second Circuit's order affirming his conviction, or June 13, 2020.  Mr. Marley's deadline to file a habeas petition was, therefore, one year from that date, or June 13, 2021.

Because Mr. Marley filed his Petition on May 14, 2021, the Petition is timely, and the Court

need not consider whether it merits equitable tolling.[3]

### III.     Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel will succeed only if a petitioner can show

that his counsel's performance fell below an objective standard of reasonableness under

prevailing professional norms *and* that he was prejudiced by that deficient performance.  *See*

*Strickland v. Washington*, 466 U.S. 668, 687–96 (1984).  This two-prong test is difficult to

satisfy.  *See United States v. Shi Hui Sun*, No. 09-CR-778, 2013 WL 1947282, at *4 (S.D.N.Y.

May 8, 2013) ("[Ineffective assistance of counsel] is a difficult showing to make, as courts must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance, bearing in mind that there are countless ways to provide effective

assistance in any given case . . . .") (cleaned up).  A petitioner cannot prevail on a claim of

ineffective assistance "merely because in hindsight he thinks [his] counsel's trial strategy was

inadequate." *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).  The petitioner must

show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.

To satisfy the second prong of the *Strickland* inquiry, a petitioner must prove prejudice

by showing "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the

proceeding would have been different.'"  *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000)

(quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)

---

[3]      The Court urges the Government to take note of this rule in any future habeas briefings, as the Supreme
Court's rule change affects the timeliness of any petition for certiorari that would ordinarily have been due between
March 19, 2020, and July 19, 2021.

(quoting *Strickland*, 466 U.S. at 694). In making this determination, the Court must consider the totality of the evidence that was presented to the jury. *Strickland*, 466 U.S. at 695. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

### A.    Mr. Cohen Did Not Provide Ineffective Assistance of Counsel

Mr. Marley argues that his initial, retained counsel was ineffective for: (1) failing to investigate an alibi; (2) intentionally misleading Mr. Marley about discovery; and (3) falsely informing Mr. Marley that the "Government had refuse[d] to turn over materially favorable evidence which served as the basis of the Government's case in chief." Pet. at 4.[4] Mr. Marley also claims some type of conflict of interest. *Id.* ("Mark Cohen . . . used his legal skill and training to intentionally mislead Petitioner regarding . . . his loyalty to Petitioner"; "Mark Cohen deliberately failed to discharge his duty of candor and honesty . . . because he was serving two master[s]"). Each of these claims fails the *Strickland* test.

### 1.    Failure to Investigate an Alibi Does Not Constitute Ineffective Assistance

Mr. Marley asserts that Mr. Cohen failed to conduct an investigation that would have uncovered an alibi defense. Pet. at 4. Mr. Marley does not provide any facts supporting that assertion in his filings, rendering it conclusory. *Castellano v. United States*, 795 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) (holding that allegations without any supporting facts or argument are too conclusory to meet *Strickland*'s standard). While failure to investigate can violate the *Strickland* standard, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on the investigation." *Carrasco v. United States*, 820 F. Supp. 2d 562, 566 (S.D.N.Y. 2011) (quoting

---

[4]    Citations to the Petition refer to the pagination of the PDF document as it appears in ECF, given the absence of uniform pagination throughout.

*Strickland,* 466, U.S. at 690-91).  As the Government notes, a continuing offense like a

conspiracy is not the type of crime to which an alibi defense is likely to be successful.  Gov.

Opp. at 11.  Given the low likelihood that an alibi would be a viable defense, Mr. Marley's

conclusory allegation does not overcome the "heavy measure of deference to counsel's

judgments" regarding particular investigative steps.  *See Akefe v. United States*, No. 15-CV-

8066, 2016 WL 6561412, at *5 (S.D.N.Y. Oct. 24, 2016) (quoting *Strickland*, 466 U.S. at 691).

Accordingly, even assuming it is factually accurate, this allegation does not satisfy the first

*Strickland* prong.

Even if Mr. Marley could overcome the presumption that his attorney's decision not to

investigate an alibi defense was reasonable, he has failed to meet the "heavy burden" of proving

prejudice under *Strickland.  See United States v. Cohen*, 427 F.3d 164, 171 (2d Cir. 2005)

(citation omitted).  Analysis of the prejudice prong traditionally starts with the strength of the

Government's case at trial.  *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only

weakly supported by the record is more likely to have been affected by errors than one with

overwhelming record support.").  Here, the Government presented 12 witnesses, including three

who testified to their personal knowledge of Mr. Marley's participation in drug trafficking, *see*

Trial Tr. at 39–128, 192–262, 331–81, and DEA agents, a government scientist, and a criminalist

for the medical examiner's office who testified about the investigation and about seizures of

drugs and firearms tied to Mr. Marley, including by DNA, *id.* at 129–88, 275–83, 382–95, 422–

51; audio recordings of calls in which Mr. Marley managed his drug business, *id.* at 82–88, 360–

362; and text messages showing Mr. Marley's contacts with the witnesses, *id.* at 93–96, 281,

362–63, 380–81.  The defense did not call any witnesses.  *Id.* at 453–55.  Mr. Marley has not

explained what alibi could have been uncovered nor how an alibi would have undermined

confidence in the jury's verdict in light of the breadth and strength of the evidence presented to the jury. *Guerrero v. United States*, No.15-CV-7282, 2017 WL 1435743, at * 9 (S.D.N.Y. Apr. 20, 2017) (failure to "identify any specific facts that could have been discerned from further investigation that would have aided in his defense, much less that would have undermined confidence in the jury's verdict in light of the strength of the evidence presented to the jury as a whole" led to failure of an ineffective assistance of counsel claim); *see* Pet. at 4.  Given the strength of the evidence introduced at trial, Mr. Marley's "conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict" are simply inadequate to satisfy *Strickland*'s prejudice prong. *Martin v. United States*, No. 19-CV-2706, 2021 WL 5493091, at *4 (S.D.N.Y. Nov. 23, 2021) (quoting *United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir. 2003)).

## 2. There is No Evidence that Mr. Cohen Intentionally Misled Mr. Marley Regarding Discovery

Mr. Marley also alleges that Mr. Cohen was ineffective for "intentionally mislead[ing] Petitioner regarding discovery and his loyalty to Petitioner."  Pet. at 4.  It is unknown to what Mr. Marley is referring, and Mr. Marley provides no other details regarding the discovery about which he was allegedly misled or how that prejudiced his defense. *See id.*.  This lack of detail renders this allegation conclusory, and it therefore fails to meet *Strickland*'s first prong. *See Castellano*, 795 F. Supp. 2d at 282.  Because Mr. Marley's allegations are hopelessly vague, there is no basis to determine that Mr. Cohen's behavior fell outside the range of effective assistance.  With respect to the second prong, Mr. Konoski replaced Mr. Cohen in January of 2017, before pretrial motions were filed and well before trial.  Order, Dkt. 68; Not. of Appearance, Dkt. 75; Mot. to Suppress; Verdict Sheet.  Without specific allegations supported by facts, Mr. Marley has failed to show that there is a "reasonable probability" that the results of

the proceeding would have been different without the alleged deficiencies in Mr. Cohen's assistance in the early pre-trial phase of the case.   *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 694).

### 3.   There is No Evidence that Mr. Cohen Falsely Informed Mr. Marley About the Government's Refusal to Turn Over Evidence

Mr. Marley asserts that Mr. Cohen "falsely inform[ed] Petitioner that the Government had refuse[d] to turn over materially favorable evidence." Pet at 4.  Lacking any detail, this allegation is entirely conclusory and, therefore, fails to meet the *Strickland* standard.  *See Castellano*, 795 F. Supp. 2d at 282.  Mr. Marley has also failed to show how anything Mr. Cohen told him about the Government's compliance *vel non* with its *Brady* obligations prejudiced him at trial, a showing necessary to meet the second prong of the *Strickland* test.  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) ("[O]ur precedent requires some objective evidence other than defendant's assertions to establish prejudice.") (citation omitted).

### 4.   There is No Evidence that Mr. Cohen Had a Conflict of Interest

"The right to counsel under the Sixth Amendment entails a correlative right to representation that is free from conflict of interest." *Pepe v. Walsh*, 31 F. Supp. 3d 441, 467 (N.D.N.Y. 2012) (internal quotation marks and citations omitted)).  "A defendant will have suffered ineffective assistance of counsel in violation of his Sixth Amendment rights if his attorney has a 'per se' conflict, a potential conflict of interest that results in prejudice to the defendant, or an actual conflict of interest that adversely affects the attorney's performance." *Id.* (citation omitted).  A *per se* conflict exists only where trial counsel is not authorized to practice law or is implicated in the very crime for which his client is on trial.  *Martinez v. Kirkpatrick*, 486 F. App'x 158, 160 (2d Cir. 2012) (citations omitted).  Potential conflicts of interest are governed by the *Strickland* standard.  *Romalis v. United States*, No. 15-CV-9881, 2017 WL

3393841, at *6 (S.D.N.Y. Aug. 4, 2017) (citation omitted).  To prove that his attorney had an

actual conflict of interest, Petitioner must demonstrate: (1) that an "'actual conflict of interest'

existed, *i.e.*, that 'the attorney's and defendant's interests diverge[d] with respect to a material

factual or legal issue or to a course of action'"; (2) that he suffered an "adverse effect" by

"demonstrating the existence of some plausible alternative defense strategy not pursued by his

counsel"; and (3) that "the alternative defense strategy was inherently in conflict with or not

undertaken due to the attorney's other loyalties or interests." *Harris v. Smith*, No. 04-CV-1268,

2008 WL 3155200, at *6 (N.D.N.Y. Aug. 4, 2008) (citations omitted).

Mr. Marley provides no information to suggest that Mr. Cohen had a *per se* conflict of

interest; Mr. Marley has failed to meet his burden to prove a potential conflict because he has

made only "speculative assertion of bias or prejudice."  *See Romalis*, 2017 WL 3393841, at *6.

Mr. Marley has also failed to establish any of the necessary factors to show an actual conflict of

interest because he has failed to show that Mr. Cohen's interests diverged from his own; that any

alternative defense strategy existed; or that such a strategy was not undertaken because of the

conflict.  *See Harris*, 2008 WL 3155200, at *6.

### B.  Mr. Konoski Was Not Ineffective

Mr. Marley asserts that his trial counsel, Mr. Konoski, was ineffective because he: (1)

failed to conduct a meaningful investigation during which he would have discovered "the

existence of exculpatory video footage, telephone records, GPS location alert, including tower

dump"; (2) failed to subpoena a phone company expert for the suppression hearing; (3) failed to

meet with Mr. Marley prior to trial to review 3500 material; and (4) entered into a stipulation

without Mr. Marley's knowledge and authorization.  Pet. at 5–6.  These claims fail the *Strickland*

test.

### 1.   Some of Mr. Marley's Claims Are Precluded

"The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010). Ineffective assistance of counsel claims may be precluded by the mandate rule when the claim's "factual predicates were impliedly rejected by the appellate court mandate, even if the assistance claim asserted on habeas had not been expressed in those terms on direct appeal." *Rodriguez v. United States*, No. 14-CV-4628, 2017 WL 6404900, at *11 (S.D.N.Y. Dec. 13, 2017), *aff'd*, 767 F. App'x 160 (2d Cir. 2019).

To the extent that Mr. Marley's assertions can be interpreted as being about the failure to provide evidence and expert testimony to support his allegations that the Government searched his phone without a warrant, those claims are precluded.  On direct appeal, Mr. Marley challenged this Court's rejection of his allegation that the DEA searched his phone without a warrant.  *Marley*, 800 F. App'x at 6, 7.  The Second Circuit rejected the challenge, finding that the Court did not commit clear error in determining that the DEA had not searched his phone without a warrant.  *Id.* at 7–8.  The Second Circuit's holding that no such search occurred bars re-litigation of that issue reframed as an ineffective assistance claim.  *Rodriguez*, 2017 WL 6404900, at *20.

### 2.   Mr. Konoski's Failure to Investigate Does Not Constitute Ineffective Assistance of Counsel

Even if Mr. Marley's claim of failure to investigate were not precluded, it would fail on the merits.  Mr. Marley asserts that Mr. Konoski failed to conduct an investigation that would have resulted in the discovery of exculpatory evidence.  Pet. at 5.  As explained above, *supra* section III.A.1., in order to succeed on his claim of ineffective assistance of counsel for failure to

investigate, Mr. Marley must do more than simply make conclusory claims about the existence

of allegedly exculpatory evidence and prejudice. *See Donato v. United States*, No. 09-CV-5617,

2012 WL 4328368, at *6 (E.D.N.Y. Sept. 20, 2012) (collecting cases). Mr. Marley has failed to

make more than a conclusory statement that an investigation would have yielded unspecified

exculpatory evidence, and he has not explained how he was prejudiced by the failure to discover

the unspecified evidence. *See* Pet. at 5. As a result, his claim fails both prongs of *Strickland*.

*Belloso-Ibarra v. United States*, No. 09-CV-8216, 2010 WL 431904, at *5 (S.D.N.Y. Feb. 8,

2010) (summarily dismissing a claim about counsel's failure to investigate because no facts were

asserted); *Bishop v. United States*, No. 11-CV-5352, 2015 WL 893560, at * 6 (E.D.N.Y. Mar. 2,

2015) ("Because Petitioner cannot show that his counsel's further investigation . . . likely would

have changed the outcome of a trial, he has not satisfied the prejudice component of *Strickland*

and his claim must fail.").

### 3.   Mr. Konoski's Failure to Subpoena an Expert From the Phone Company Does Not Constitute Ineffective Assistance of Counsel

Mr. Marley asserts that Mr. Konoski provided ineffective assistance by failing to call an

expert witness at the suppression hearing. Pet. at 5. Even if Mr. Marley's claim were not

precluded, it would fail on the merits. To succeed on a claim of ineffective assistance of counsel

based on the attorney's failure to call an expert witness, "petitioner would have to show either

(1) that trial counsel unreasonably failed to consider consulting an expert, or (2) that trial counsel

did consult an expert, but did not call one, (3) that that expert was prepared to provide specific,

useful testimony in support of his case, (4) that the trial court would have admitted such

testimony, and (5) that the testimony likely would have affected the outcome of his trial."

*McDowell v. Heath*, No. 09-CV-7887, 2013 WL 2896992, at *35 (S.D.N.Y. June 13, 2013). Mr.

Marley has failed to point to any specific, useful testimony that an expert witness from the phone

company could have provided and has failed to explain how such testimony would have affected the outcome of this case.  Pet. at 5.  Without further details, the Court cannot conclude that Mr. Konoski acted unreasonably in failing to call an expert.

Even if Mr. Marley had shown that Mr. Konoski behaved unreasonably, he has made no showing that the choice not to call an expert affected the outcome of the trial.[5]  *See Cruz v. Griffin*, No. 16-CV-8998, 2019 WL 6220806, at *13 (S.D.N.Y. Oct. 24, 2019) ("[B]ecause Petitioner has failed to make a specific proffer as to what relevant testimony or analysis a medical expert might have offered, he cannot demonstrate prejudice.").  In short, Mr. Marley has not made a sufficient showing to meet either prong of *Strickland* with respect to Mr. Konoski's failure to call an expert from the phone company.

### 4.  Mr. Konoski's Failure to Meet with Mr. Marley About 3500 Material Prior to Trial Does Not Constitute Ineffective Assistance of Counsel

Mr. Marley argues that his trial counsel was ineffective for failing to review with him prior to trial material that must be disclosed by the Government pursuant to 18 U.S.C. § 3500, also known as "3500 material".  Pet. at 6.  This act cannot fall below an objectively reasonable standard of representation because 3500 material does not have to be produced until a witness has testified at trial.  *See* 18 U.S.C. § 3500(a).  This argument, therefore, does not satisfy the first *Strickland* prong; because Mr. Marley does not explain how his lack of access to 3500 material at a time when he was not legally entitled to it prejudiced him at trial, he has also not met the second *Strickland* prong.  *Feyrer*, 333 F.3d at 120.

---

[5]    Even if the data to which the expert would testify were interpreted as Mr. Marley would like it to be, that would not establish that his phones had been searched.  *Marley*, 800 F. App'x at 8.  Thus, Mr. Marley cannot show prejudice from the failure to call the expert.

**5.  Mr. Konoski's Decision to Enter into a Stipulation Does Not Constitute Ineffective Assistance of Counsel**

Mr. Marley asserts that Mr. Konoski's decision to enter into certain unspecified stipulations with the Government constitutes ineffective assistance of counsel.  Pet. at 6.  "[T]rial decisions to offer or stipulate to certain evidence . . . are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so."  *United States v. Cohen*, 427 F. 3d 164, 170 (2d Cir. 2005) (cleaned up).

Mr. Marley asserts that the stipulation about which he is complaining involved "the most essential evidence and investigative techniques used that was the crux of the [G]overnment['s] case in chief . . .."  Pet. at 6.  It is not clear to the Court to which stipulation Mr. Marley is referring, so the Court cannot find that Mr. Konoski's decision to stipulate was objectively unreasonable.  As the Second Circuit recognized in *United States v. Gaskin,* defense attorneys "routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case."  364 F.3d 438, 469 (2d Cir. 2004).  Mr. Marley has not overcome the high burden of showing that Mr. Konoski's stipulations were unreasonable, nor has he shown that he was prejudiced at trial by those stipulations.  *Id*. at 468.

**IV.    Prosecutorial Misconduct**

Mr. Marley alleges that Assistant U.S. Attorney David Abramowicz engaged in prosecutorial misconduct by: (1) failing to disclose favorable evidence (a *Brady* violation); and (2) knowingly eliciting perjured testimony.[6]  Pet. at 8–9.

---

[6]      Mr. Marley alleges that Mr. Abramowicz elicited perjured testimony at the suppression hearing and at trial. Pet. at 9.  The Government points out that Mr. Abramowicz did not appear at trial.  Gov. Opp. at 14.  Reading the Petition liberally, the Court construes the Petition's claims about the trial as against the Assistant U.S. attorneys who appeared at trial.

### A.    Mr. Marley's Claims Are Procedurally Defaulted

The Government argues that Mr. Marley is estopped from raising this claim because he failed to raise it on direct appeal.  Gov. Opp. at 13.  "In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."  *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citations omitted).  An exception applies "if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence."  *Id.* (citations omitted).  "Cause for a procedural default exists where something external to the petitioner . . . impeded his efforts to comply with the . . . procedural rule."  *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up).  "The prejudice prong requires that the defendant suffer actual prejudice resulting from the errors of which he complains."  *Jiau v. United States*, No. 15-CV-380, 2016 WL 11201437, at *4 (S.D.N.Y. Nov. 6, 2016) (cleaned up).  To establish prejudice, "[a] defendant must show that the errors at trial created an actual and substantial disadvantage, infecting the petitioner's entire trial with error of constitutional dimensions."  *Id.* (cleaned up).  Alternatively, "'[t]o establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (cleaned up).  "This is a 'demanding' standard and 'permits review only in the extraordinary case.'"  *Garafola v. United States*, 909 F. Supp. 2d 313, 326 (S.D.N.Y. 2012) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Because Mr. Marley failed to raise a claim of prosecutorial misconduct on direct appeal, *Marley*, 800 F. App'x 4; Pet. at 8, he cannot raise the claim collaterally.  Mr. Marley provides no explanation for his failure to raise these claims on direct appeal, and, thus, has not satisfied the cause requirement to escape a procedural default.  Pet. at 8–9; *Moore v. United States*, No. 16-CV-5709, 2018 WL 9439860, at * 2 (E.D.N.Y. Sept. 12, 2018) ("[Petitioner] has provided no

explanation for the failure [to assert the claim on direct review] and therefore does not establish cause."). Mr. Marley also does not provide any facts from which the Court could find that there was actual prejudice. Pet. at 8–9. Finally, Mr. Marley does not attempt to demonstrate actual innocence. *Id.* In short, the prosecutorial misconduct claims are procedurally defaulted.

### B.   Mr. Marley Has Not Established That Any Testimony Was Perjured

Mr. Marley asserts that the prosecutor engaged in misconduct because "perjur[ed] testimony" was elicited "at a critical stage[] during the proceedings." Pet. at 9. Even if this claim were not procedurally defaulted, it is meritless.

### 1.   Mr. Marley's Claim Is Precluded

As noted above, *supra* section III.B.1., "a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal", nor may he relitigate issues for which the factual predicate was impliedly rejected by the appellate court. *Yick Man Mui*, 614 F.3d at 53, 55.

To the extent that this claim of prosecutorial misconduct rests on Mr. Marely's contention that Special Agent Luna lied during the *Franks* hearing, it is barred by the mandate rule. At the *Franks* hearing, Mr. Marley challenged the veracity of Special Agent Luna's testimony, claiming that the conversation about which Special Agent Luna testified never occurred. Tr. of Proceedings, Dkt. 139 at 121–128. On appeal, Mr. Marley directly challenged the *Franks* proceeding, claiming that the evidence obtained pursuant to the Order that was issued based on an affidavit from Special Agent Luna should have been suppressed. *Marley*, 800 F. App'x at 6–7. The factual predicate for Mr. Marley's current claim of prosecutorial misconduct appears to be that Special Agent Luna lied at the *Franks* hearing when he testified to a conversation between himself (in an undercover capacity) and Mr. Marley. *See id*; Op. & Order 12–14. By finding that the District Court properly concluded that probable cause existed based on the phone

17

conversation and Special Agent Luna's testimony about it, the Second Circuit impliedly rejected

Mr. Marley's argument that Special Agent Luna fabricated the phone conversation.  *See Marley*,

800 F. App'x at 7.  Thus, Mr. Marley's claim that it was prosecutorial misconduct to introduce

Special Agent Luna's testimony is procedurally barred.

### 2.   Mr. Marley Has Not Established that there Was Perjured Testimony

Even if Mr. Marley's claims of prosecutorial misconduct premised on allegedly perjured

testimony were not barred, they would fail on the merits because Mr. Marley has not

demonstrated that there was any perjured testimony, let alone that the prosecutor knew testimony

was perjured.

"Reversal of a conviction based upon allegations of perjured testimony should be granted

only with great caution and in the most extraordinary circumstances."  *United States v.*

*Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000) (citations omitted).  "To prevail on such a claim, a

petitioner must show: '(i) the witness actually committed perjury; (ii) the alleged perjury was

material; (iii) the government knew or should have known of the alleged perjury at the time of

trial, and (iv) the perjured testimony remained undisclosed during trial.'"  *Guastella v. United*

*States*, No. 06-CV-2924, 2009 WL 1286382, at *11 (S.D.N.Y. May 8, 2009) (citing *id.*).  The

Petition does not meet any of those requirements.

Mr. Marley has not shown that any witness committed perjury.  In order to make such a

showing, he would need, at minimum, to specify the testimony he contends was perjured.[7]  *See*

*id.* (discussing failure to cite to specific testimony).  He would also need to explain how the

alleged perjury was material.  *Smith v. Hulihan*, No. 11-CV-2948, 2011 WL 4058764, at *22

---

[7]      Although Mr. Marley has not specified whose testimony he believes was perjured, Pet. at 9, like the
Government, Gov. Opp. at 14, the Court assumes that Mr. Marley is referring to the testimony of Special Agent
Luna at the *Franks* hearing.

(S.D.N.Y. Sept. 13, 2011) (even assuming that perjury did occur, the habeas claim failed because Petitioner failed to show "any reasonable likelihood that the false testimony could have affected the judgement of the jury") (quoting *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003)). Lacking evidence to support the required showing as to the first two prongs required to obtain habeas relief based on perjured testimony, Mr. Marley cannot show that the Government knew or should have known of the unspecified perjured testimony or that it remained undisclosed during trial. *Guastella*, 2009 WL 1286382, at *11. Mr. Marley therefore has failed to meet the requirements for collaterally attacking his conviction based on prosecutorial misconduct associated with presenting perjured testimony.

### C.     Mr. Marley Has Not Established That a Brady Violation Occurred

In order to establish a violation of *Brady v. Maryland* in a collateral attack, the petitioner must show that the government suppressed material, favorable evidence. *Pizzuti v. United States*, 809 F. Supp. 2d 164, 177 (S.D.N.Y. 2011). "Favorable evidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citation omitted). "The burden of proving that the Government failed to disclose such evidence lies with the petitioner and conclusory allegations that the Government suppressed or concealed evidence are insufficient to satisfy this burden." *Wolfson v. United States*, 907 F. Supp. 2d 418, 424–25 (S.D.N.Y. 2012) (cleaned up).

Mr. Marley provides no details as to what evidence was withheld or how that evidence would have been material. Pet. at 8, 9. Mr. Marley's conclusory allegations, which is all there is on this point, are insufficient to establish a *Brady* violation. *See Wolfson*, 907 F. Supp. 2d at 425 (citing *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998) ("In the absence of a proffer by [the defendant] of any nonspeculative basis for inferring that . . . the government had not

made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary)).

### V. Newly Discovered Evidence

Mr. Marley argues that three categories of newly discovered evidence would support a finding of actual innocence: (1) Special Agent "Luna knowingly and intentionally suppl[ied] false testimony [] concerning where the information came [from] during [the] pretrial hearing"; (2) DEA agents "manufactured venue"; and (3) DEA agents "knowingly and intentionally used 'parallel construction' as a mean[s] of disguising how the investigation truly began [] and violate[d] the pretrial discovery rules by burying evidence that could prove useful to the Petitioner."  Pet. at 10–11.

"[N]ew evidence in a Section 2255 proceeding . . . is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner."  *Giacalone v. United States*, 739 F.2d 40, 43 (2d Cir. 1984) (internal quotation marks and citations omitted).  "The petitioner bears the burden of convincing the court that the newly-discovered evidence would have resulted in an acquittal."  *United States v. Ajemian*, 193 F. Supp. 3d 298, 300 (S.D.N.Y. 2016), *aff'd sub nom. United States v. Rutigliano*, 694 F. App'x 19 (2d Cir. 2017) (internal quotations omitted).  The "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (cleaned up).

### A.   Special Agent Luna's Testimony

Mr. Marley alleges that Special Agent Luna perjured himself at the *Franks* hearing. Pet. at 10.  Mr. Marley has previously raised this argument, *see* Op. & Order at 12, and this Court and the Second Circuit have previously rejected it.  *Marley*, 800 F. App'x at 6–7.  Regardless of the legal theory under which Mr. Marely seeks relief based on Special Agent Luna's testimony, as

discussed *supra*, section IV.B.1., this claim is barred by the mandate rule. *See Yick Man Mui*,

614 F.3d at 53, 55.  Further, this claim is not new, and it does not relate to whether Mr. Marley is

actually innocent. *Corbett v. United States*, No. 15-CV-1461, 2019 WL 475830, at *10 (D.

Conn. Sept. 30, 2019).[8]

### B.      Manufactured Venue

Mr. Marley argues that the DEA agents "manufactured venue." Pet. at 10.  While it is

somewhat unclear what Mr. Marley means by this, construing Mr. Marley's Petition liberally,

the Court construes this claim as arguing that venue would have been improper but for

machinations by the Government.

### 1. Procedural Default

As noted above, *supra* section IV.A., claims not raised on direct appeal may not be raised

in a collateral attack absent the petitioner establishing cause for the default and demonstrating

prejudice or actual innocence. *Thorn*, 659 F.3d at 231; *Maples*, 565 U.S. at 280.

Mr. Marley has not explained his procedural default nor has he explained how he was

prejudiced, Pet. at 10–11, so the Court turns to actual innocence.  Even if venue were improper,

it would not tend to show that Mr. Marley was innocent.  Venue has to do with the place the

crime occurred, not whether the Defendant committed a crime.  Thus, even if the Government

engaged in undercover or overt machinations so that some part of the crime with which Mr.

Marley was convicted occurred in the Southern District of New York, that does not mean that

Mr. Marley is actually innocent.

---

[8]       The claim that Special Agent Luna perjured himself at the *Franks* hearing is also not believable.  This Court already determined that Special Agent Luna's testimony at the *Franks* hearing was credible.  Op. & Order on Mot. to Suppress, Dkt. 148 at 12.  Additionally, Special Agent Luna's testimony was supported by testimony that this Court found credible from Special Agent Enders and corroborated by call records. *Id.*

### 2.   Venue is Proper

Even if Mr. Marley's claim that venue in the Southern District of New York was manufactured were not procedurally barred, and even if it were improper for the Government to intentionally take steps to establish venue in a particular judicial district, which it is not, the claim would be meritless.  Venue for a crime charged under 21 U.S.C. § 846 exists "in any district in which any part of the crime was committed."  *United States v. Duque*, 123 F. App'x 447, 448, 449 (2d Cir. 2005) (citations omitted).  "In the context of a conspiracy charge, venue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators."  *Id.* at 449 (cleaned up).

The Government provided adequate evidence of venue that was independent of activities the Government could have influenced: there was testimony that Mr. Marley made trips related to drug trafficking to Poughkeepsie, which is in this District; there was evidence that a co-conspirator, while transporting drugs in furtherance of the conspiracy, abandoned his car in the Bronx during a police chase; and there was evidence that Mr. Marley's car was stopped in Manhattan and found to contain drug proceeds.  Gov. Opp. at 15.

In sum, Mr. Marley's vague and conclusory statement that venue was improperly manufactured, Pet. at 10, is not backed by any evidence and is insufficient to demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *United States v. Martinez*, 953 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### C.   Parallel Construction

Finally, Mr. Marley argues that the DEA agents "used parallel construction" to "disguise how the investigation truly began" in a way that "violate[d] the pretrial discovery rules by

22

burying evidence that could prove useful to the petitioner." Pet. at 10–11. While it is somewhat unclear what Mr. Marley means by "parallel construction", the surrounding context suggests that he is alleging that the DEA agents engaged in some targeted investigatory activity so that this investigation could be fully separated from another investigation with which its initial phases overlapped. This claim, which may or may not be factually accurate, is procedurally defaulted because, as discussed *supra* section IV.A., claims not raised on direct appeal may not be raised in a collateral attack unless the petitioner establishes cause for the default and ensuing prejudice or actual innocence. *Thorn*, 659 F.3d at 231; *Maples*, 565 U.S. at 280. Mr. Marley provides no explanation of his failure to raise the claim on direct appeal, no assertion of prejudice, and no demonstration of actual innocence. Even if this assertion were not procedurally defaulted, it is the type of vague and conclusory assertion that is insufficient to warrant an evidentiary hearing. *Gonzalez v. United States*, 722 F. 3d 118, 130-31 (2d Cir. 2013) ("To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact, that if proved at a hearing would entitle him to relief.") (citations omitted). As a result, this claim also fails.

**CONCLUSION**

For the foregoing reasons, the Petition is DENIED. The Court declines to issue a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed in forma pauperis is, therefore, denied.

The Clerk of Court is respectfully directed to terminate the open motion at No. 16-CR-374, Dkt. 271, and to close the case at No. 21-CV-4725.  The Clerk of Court is further directed to mail a copy of this Opinion to Mr. Marley.

**SO ORDERED.**

**Date:  April 25, 2022**
   **New York, New York**

                 **VALERIE CAPRONI**
                **United States District Judge**